JOSHUA D. HURWIT, STATE BAR NO. 9527
UNITED STATES ATTORNEY
DAVID J. MORSE, STATE BAR NO. 10066
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
1290 W. MYRTLE ST. SUITE 500
BOISE, ID 83702-7788
TELEPHONE: (208) 334-1211

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> TYLER JAY WATSON, <br><br> Defendant. | Case No. 1:22-cr-00149-BLW <br><br> **GOVERNMENT'S SUPPLEMENTAL BRIEF** |

## INTRODUCTION

The Court suggested the parties file simultaneous supplemental briefs to address the new Ninth Circuit case, *United States v. Estrella*, 69 F.4th 958 (9th Cir. 2023). The June 7, 2022, encounter between Officer Scott and Defendant, which resulted in a search and seizure, was lawful pursuant to the standard set forth in *Estrella*.

## FACTUAL BACKGROUND

Defendant's involvement in a drug trafficking organization was uncovered through wire and electronic evidence intercepts. (*see* Gov. Ex. 1. at 3; *see also* Gov. Ex. 2. at 5.) Based on information obtained from those intercepts, detectives from the Nampa Police Department

GOVERNMENT'S SUPPLEMENTAL BRIEF - 1

Special Investigation Unit ("SIU") and agents from the Drug Enforcement Administration ("DEA") planned an operation to stop Defendant, search his vehicle and home, and seize all drugs and illicit drug proceeds. Nampa Police Department ("NPD") Patrol Officer Jared Scott was asked to assist in Defendant's stop, search, and arrest. SIU Detective Michael Coronado briefed Officer Scott about Defendant; explained that he was the target of the operation, that Defendant was currently on parole, and that the plan was to conduct a traffic stop to search Defendant's car for drugs. On June 7, 2022, Officer Scott pulled over Defendant for failing to use his turn signal when turning. Officer Scott encountered Defendant and eventually asked if he could see Defendant's registration and insurance. (ECF No. 22, Ex. H at 00:00–01:04.) While Defendant was looking for his registration and insurance, Officer Scott asked Defendant several questions including whether Defendant was "on probation or parole?" *Id.* Defendant responded that he was on parole. Officer said, "Okay, what for?" *Id.* Defendant responded "possession." Officer Scott asked if Defendant had "been staying clean" and Defendant affirmed. *Id.* Officer Scott asked whether there were any outstanding warrants for Defendant and if there were any drugs in Defendant's car "that a "K-9" would alert to?" *Id.* Defendant answered no to both questions. *Id.*

      Officer Scott then walked back to his car and radioed dispatch, "confirming P&P does want him detained and the vehicle searched?" (ECF No. 22, Ex. G at 02:26–03:19.) Dispatch answered, affirmed." *Id.* Officer Scott then received a phone call instructing him to "just go ahead, per PO, detain him and then we'll search his car on behalf of his PO, and then go that route." *Id.* at 03:32–04:20. Idaho Department of Correction Probation and Parole Officer Craig Landers, who had been assisting with the drug investigation, was the parole officer that had

GOVERNMENT'S SUPPLEMENTAL BRIEF - 2

asked for Defendant to be detained. (ECF No. 22-6, at 3.) Officer Landers specifically requested that Defendant be removed from the vehicle and that there be a search of his person and vehicle by the Nampa Officers per the Fourth Amendment waiver in his signed parole agreement. *Id.* Officer Scott asked Defendant to step out of his vehicle and placed him in the back of Officer Scott's patrol car. (ECF No. 22, Ex. G at 04:40–06:15.) Inside Defendant's car, investigators found empty syringes and two stacks of cash in varying denominations. (ECF No. 22-5 at 1.) Investigators also found fentanyl in two black magnetic boxes attached to the undercarriage of his car. (ECF No. 22-5, at 1; Ex. H, at 14:38.)

## ARGUMENT

*Estrella* supports the Government's position because Officer Scott had probable cause to believe that Defendant was on active parole before he and other law enforcement conducted a search and seizure pursuant to a parole condition.

Consistent with Ninth Circuit precedent and Fourth Amendment principles, "an officer must know of detainee's parole status before that person can be detained and searched pursuant to a parole condition." *United States v. Estrella*, 69 F.4th 958, 966 (9th Cir. 2023) (quoting *Moreno v. Baca*, 431 F.3d 633, 641 (9th Cir. 2017). In *Estrella*, the panel determined the standard of knowledge an officer must possess, holding that "a law enforcement officer must have probable cause to believe that an individual is on active parole before conducting a suspicionless search or seizure pursuant to a parole condition." *Id.* at 971-72. There, the panel affirmed the district court's denial of the defendant's motion to suppress a handgun found in the defendant's vehicle during a traffic stop. *Id.* at 973. At the time of the encounter, the defendant was a registered gang member on California state parole and subject to a suspicionless search

condition. *Id.* at 961. The panel concluded that the arresting officer had probable cause to believe the defendant was on active parole at the time of the encounter. *Id.* The panel reasoned that prior to the encounter, the arresting officer was familiar with the defendant: "he met with Estrella personally, reviewed his criminal history, discussed his parole conditions, and maintained contact with his parole officer." *Id.* at 972. The arresting officer also learned that Defendant had violated a parole condition four months prior to the encounter. *Id.* The officer did not know, however, the precise start and end dates of the defendant's parole term, but he knew that California state parole ordinarily lasts three to four years. *Id.* The panel acknowledged that while an officer must have "advance knowledge" that the detainee remains on active parole, "the officer need not know to an absolute certainty, with precise day-by-day or minute-by-minute information of the detainee's parole status." *Id.* at 961. Instead, "it is sufficient for the officer to determine, using the well-established rules governing probable cause, that the individual to be detained and searched is on active parole, and that an applicable parole condition authorizes the challenged search or seizure." *Id.* at 972.

      Like in *Estrella*, Officer Scott had probable cause to believe that Defendant's parole status was active before he performed the traffic stop. Detective Coronado told Officer Scott, during a phone call earlier in the day, that Defendant was currently on parole. Detective Coronado had been investigating Watson for over a month, was part of a task force that included an Idaho Department of Correction Probation and Parole officer, and Detective Coronado was fully apprised of Defendant's parole status on the day and at the time he relayed Defendant's parole status to Officer Scott. The conversation was meant to prepare Officer Scott for the contact with Defendant by providing information that Defendant was a target of the operation,

GOVERNMENT'S SUPPLEMENTAL BRIEF - 4

and that the plan was to conduct a traffic stop to search Defendant's car for drugs and contraband. Like the arresting officer's familiarity with the defendant in *Estrella*, Officer Scott was familiar with Defendant's history, Defendant's active parole status, and Defendant's violation of his parole condition. In fact, Officer Scott can be heard on the radio "confirming P&P search," which confirms his knowledge of Defendant's parole status. Officer Scott's level of knowledge was sufficient because although he did not need to know with absolute certainty, the precise day-by-day or minute-by-minute information of Defendant's parole status, he had, at minimum, probable cause to believe that Defendant was on parole based on the information he received from Detective Coronado.

GOVERNMENT'S SUPPLEMENTAL BRIEF - 5

## CONCLUSION

For these reasons, Officer Scott had probable cause to believe that Defendant was on active parole before he and other law enforcement conducted a parole search pursuant to Defendant's parole condition.

Respectfully submitted this 14th day of July, 2023.

<div style="margin-left: 50%;">

JOSHUA D. HURWIT
UNITED STATES ATTORNEY
By:


*/s/ David J. Morse*
DAVID J. MORSE
Assistant United States Attorney


*/s/ Matisse Melendres*
MATISSE MELENDRES, Legal Extern
Under Idaho Bar Commission
Rule 226

</div>